And I believe we're ready to hear our first case. And Hugh v. Hasaki Restaurant. Good morning, your honors, and may it please the court. My name is Lillian Marquez, and I represent defendants' appellants. The sole issue in this case is whether the district court must enter the accepted Rule 68 offer of judgment in this FLSA case without judicial approval. The plain language of the rule states, yes, the court must enter judgment once the plaintiff has accepted the defendant's offer of judgment. Here there is no conflict with the FLSA itself, nor with any regulation or rule that would indicate that Congress has stated anything other but the procedure. Haven't there been any number of exceptions made to this mandatory for class actions, for various things, so that we haven't interpreted 68A as being that absolute, have we? The court has ruled that the rule itself is mandatory. However, you are correct that they have made exceptions in light of contrary congressional statutes. Why does it require a congressional statute if, in effect, the policy reasons under the FLSA, as we articulated them in Cheeks, are judge made? Why does it matter? It matters because of the years, decades of statutory construction rules. Rule 68, like other federal civil procedure rules, are law. They are interpreted as if they're statutes. And so, if there's plain meaning in the rule, absent some contrary congressional language, it should be read with a fair reading. But what is there in 68A's policy, which goes to setting damages and dealing with that, that raises any problem with having a court approval in a situation like this. I mean, this is an area where you have liquidated damages, where none of the things that 68A was concerned with, which is to get the damage figures fixed. So why shouldn't this be treated in the way we have treated other such things? Under 41A, for instance, and so on. First, your point as to rule 41A, there was an ambiguous term, the applicable federal statute. So the court was examining there because of this. Well, yes, there was that. And yet, it doesn't, 68A doesn't apply to class, wouldn't apply with class actions, and yet we've made an exception with a class action case. First, class actions, which is under Rule 23, although there's no ambiguity that the courts were reviewing when trying to conciliate Rule 23 with Rule 68. The fact that they were conciliating was Rule 23 explicitly requires judicial review. There's no explicit judicial review requirement in the FLSA or any other rules. This was a class action, this was intended to be a class action originally, right? I don't believe so, but this is just, this is just- I thought that there was a putative class, no? I don't believe so. Okay. This, it may have been a collective, but as courts have said, collective is very- A collective, I'm sorry, that's what I meant. I mean, it was going to be a collective. But there is a distinction between class actions and collective actions. In class actions, because the representative, even before class cert, is a representative of the putative class, because it is an opt-out procedure as opposed to opt-in. For FLSA collectives, they're not considered representatives for the putative collective. Haven't all of the other circuits, except the Fifth Circuit, actually said that the FLSA, that there are no exceptions to that requirement of no waiver of things of this sort. And the Fifth Circuit has a possible exception for certain kinds of bona fide disputes. But how can you possibly tell, even if we buy the Fifth Circuit position, how can you possibly tell at this stage of the game whether there is that kind of dispute? So that even if we don't take a stand in the dispute between the Fifth and the other circuits, isn't this a situation where we can't really do anything yet and just at this stage require the agreement. Because we don't know that the Fifth Circuit type of exception would apply. In the, I believe you're referring to the circuit's treatments of Lin's Food Stores. Lin's Food Stores and the subsequent agreements to look at, subsequent circuit decisions to look at it, regard waiver and the enforceability of a waiver, which is a release that was entered and they're looking at later whether it's enforceable as a matter of public policy, which is permissible and would be permissible in the context of a Rule 68 offer of judgment after it's been entered in accordance with the rule. Here we have a prospective entry of judgment. We are in the court, which is also different from the circumstances in the other circuits, so that we have the rules of civil procedure acting upon the situation. It's distinct. Had there been any issue in terms of the issues brought up in Cheeks or in those other circuits, the plaintiffs can, after the entry of judgment, move under 60B to vacate the judgment. They could then- Isn't that just an awfully long rigamarole for something that we could do more directly this way? And I know that Gudeen did that, but that was in the particular context of bankruptcy where there was a direct reference to 68A. Why take the detour of- Because Congress required it. Let me ask you, the Supreme Court has held that you can't waive statutory damages in FLSA cases, correct? If you're referring to Brooklyn Savings, it's unclear whether it is still- These cases were in the Brooklyn Savings and then also Schulte, and as far as we know, those cases still are on the books, right? I mean, they were decided in the 40s. Right, it's unclear if the Portal of Portal Act in some way abrogated it because it limited the liquidated damages provisions. But again, those cases deal after the fact in the enforcement of a contract. And- No, but what I'm wondering about now is how Rule 68 would comport with those particular rules. Well, let's take a similar law, which is actually the Migrant and Seasonal Agricultural Workers Act, which works in tandem with the FLSAs under the same title, and protects an even more exploited group of workers, which are seasonal or migrant agricultural workers who sometimes work in slave conditions. There, there's an explicit waiver prohibition in the statute, and in the regulation, it reiterates that prohibition against waivers, but then states explicitly that this does not prevent private settlements of litigation. I think that taking that act, which is in the same title as FLSA and is actually more targeted towards protecting a more exploited group of workers, that simply because there's some waiver prohibitions and the extent of that waiver prohibition is still a little bit unclear, that doesn't prevent the parties from entering or accepting a Rule 68 offer of judgment. And that does not waive their right to enforce their minimum wage or overtime, substantive rights. Basically, as I see it, because of the points that Judge Calabresi made a minute ago about the various kinds of cases that Rule 68 can't abrogate a court approval on. Not only class actions, but bankruptcy claims on behalf of minors in New York and so forth. Key TAM actions, that you're really drawing a distinction here between statutory requirements of court approval and what we did in Sheiks. That's correct. The statutory requirements are explicit in those statutes. Congress knows how to make those sort of requirements. They did not do so in the FLSA, even though they were aware of Rule 68. The reasoning that we used in Sheiks, which also applied a policy determination to Rule 41, apply with equal force here? No, because they were interpreting the ambiguous portion of Rule 41, which is applicable federal statute. It determines that the FLSA is such a statute, and to further the public policy purpose of the FLSA, this judicial review requirement would be necessary. However- Doesn't that amount, in effect, to saying that the FLSA itself, whether it's in the text or not, imposes a need for judicial approval or department of labor approval? I mean, the Sheiks found it in the statute, even if it's not in the text of the statute, and I understand your argument there. Had the court believed that that was in the statute in some vein, it wouldn't have needed to go through the statutory interpretation of Rule 41. Indeed, it actually limited its holding to simply stipulated dismissals with prejudice. It left in one of the footnotes for another day whether or not without prejudice, those stipulated dismissals required judicial approval. Can I ask a question about the practical effect of this? Our district courts are split on the issue that we're arguing about today. The court below said that this had very little burden on district courts. This is just signing off on a letter. It's all very easy for the court to do the approval. What is your reaction to that observation? First, just in experience, it's not exactly true. I've had cases where it's taken six months for an entry or approval of a submitted Rule 41 settlement agreement in terms of what the burdens are. That's not the question that the court could reach at this time if the Congress has not invited it through ambiguous language in a statute or through a specific order to impose judicial review. Here, the language is clear in Rule 68, and the court inquiry ends there. And the practice where you said you waited as long as six months, those are in cases, I assume that you don't go forward with the settlement, it just sits, the money doesn't exchange hands until the district court signs off? That's correct. Although these clients had the capacity contract, there is no issue with them agreeing to the agreement. And there is actually, in the end, nothing that the court found objectionable. In the settlement agreement, it waited for six months. Nothing happened for that time. What is your response to the argument that was adopted by the district court and that can be found in Judge Caponi's decision? That as a matter of contract law, you need to have a valid acceptance, and this isn't a valid acceptance. Acceptance and capacity to accept and manifest your assent to enter into an agreement is completely different from the enforceability of a waiver, for instance, in the FLSA due to public policy concerns. Capacity has to do with, for instance, mental capacity to understand the terms, minority. If you're under the influence of some drugs or alcohol, here there's no indication that that was the case. In fact, in New York, we presume that the contract is validly accepted or that the person has capacity to contract. To conflate the two would, for instance, in Cheeks, had the Cheeks court believed that capacity was an issue, they would have simply said there's no contract here, there's nothing to look at. If mandatory means mandatory, as you say, and there are no exceptions, which is really the question, then of course that settles it. But if there are exceptions, or if it is possible to read the statute to make exceptions, doesn't it make sense to have court approval to avoid such things, heaven forfend that it should be so in a case like this, of lawyers having a settlement in which they get much too much of the deal? All the reasons why we think that basically court approval of such things is a good idea. Even apart from the FLSA policy, in fact. One could make the argument that the court should look at attorney's fees in any case, because this is a possibility really in any case. And it's the stance typically that the court will not involve itself in the creation of contracts. And in this case, in UV Bronx Medical Center said that we presume that the retainer fee agreements between counsel and their client are legitimate. But there are other rules that protect clients, not only in FLSA cases, but in all cases. One is that they do have the ability to challenge the validity of that contract, if it's invalid under law because, for instance, they ask for too much in contingency fee. Or the professional rules of conduct, 1.5, says that you cannot charge an illegal excessive fee. Attorneys appearing before this court are subject to those conduct rules and are officers of the court. And we do not police, or the court does not typically police the conduct between their attorney and their client. And the FLSA itself has a fee shifting rule that presumes that having an attorney is much more to the benefit of the clients. And in fact, most cases here are in the circuit and across the nation are represented in FLSA cases. So your argument is that if we accept this as a policy justification for deciding with the appellee, that that would apply to, that would essentially undercut Rule 68 entirely. It would not only undercut Rule 68, it would basically leave the court having to answer why is, why are we looking at attorney's fees in this case and not other cases? And I'm certain that the clients would like more money out of a deal, but then to submit retainer fees to the court for approval or review in any other case may invite satellite litigation. I think that this could be a rule that would have far reaching effects, not just in FLSA cases. Thank you. May it please the court, Adina Rosenbaum on behalf of Amicus Public System Litigation Group in support of the decision below. Since the FLSA's earliest days, both this court and the Supreme Court have recognized that employees cannot waive their rights under this statute. And that because of that, there are limits on employees' abilities to settle or compromise FLSA claims. And this court delineated and applied those limits in Cheeks versus Free Pancake House. And- Why don't you focus on the argument that your adversary's made, which is that Cheeks is different than the other kinds of situations that I mentioned, because it's a judgment rule, it's not statutory. I think it- Otherwise, can't we simply read policy into every situation that is settled under or that is compromised under Rule 68 and then simply require judgment approval in every case? The premise of Cheeks is that the FLSA requires DOL or court approval of settlements. So Cheeks was considering Rule 41A1A2, and under that rule, plaintiffs can dismiss their claims without a court order if they file a stipulation signed by all of the parties. Subject to four federal rules and any applicable federal statute. And if a statute is an applicable federal statute, the requirements of that statute apply and are incorporated into Rule 41. In Cheeks, the court held that the FLSA is an applicable federal statute and that therefore stipulated dismissals with prejudice under Rule 41A1A2 require court or DOL approval. So the court necessarily determined that court or DOL approval was a requirement of the FLSA. This one could distinguish the two rules. So Rule 68, this is a public filing. In the Rule 41 context, it would be the possibility of a private settlement that would never be filed in the public record. Isn't that a pretty important distinction? That is a distinction, and that goes to whether there can be abuses under Rule 68 settlements. And there certainly can still be abuses under Rule 68 because of the unequal bargaining power between employers and employees. And there can also be problems in terms of the percentage of the award that is going towards attorney's fees instead of to- Isn't the basic argument that you are making is that this, which can be described as policy of the FLSA, has been read by our court and by the Supreme Court to be the statute. So that the distinction between policy, this isn't just something that somebody says, this is a nice thing to do, but rather, that's what the FLSA statute means. And if it means that, then it's exactly the same as all the other cases. And that I think we should be careful about talking about policy up here, but if that's what the FLSA means, then there's no difference. Isn't that really the argument that you are making? That is the argument that I'm making, that it is well established that the FLSA requires court approval of settlements. That is the, or DOL supervision. That is the basis of Cheeks, and the non-waiver principle of the FLSA has been recognized for over 70 years. So the appellants- Isn't it, is there a distinction in the Rule 68 from Rule 41, which 41A1A2, little i, i, in which Rule 68 does not contain the language subject to any applicable federal statute, which is in 41. Isn't that a valid distinction? It doesn't contain that language, so Cheeks is not directly controlling on that. Absolutely. Yeah, I mean, one question here is whether a general Rule 68, which is a very general provision, has perhaps exceptions based upon the fact that there are specific exigencies in other cases that would cut against that. And it just can't be read literally, but it's text is pretty clear. It does not contain the applicable federal statute language. But even appellants agree that when there is a requirement in a statute of court approval, that that applies in the Rule 68 context as well, and the FLSA is a statute that requires court or DOL approval. And appellants argue that it doesn't because that's not specifically written in its text, but of course statutes requirements are not all explicitly stated in so many words in their texts. Courts interpret statutes using traditional tools of statutory interpretation. And here, both this court and the Supreme Court- Your point is that it's really undisputed that courts have interpreted the FLSA the way you've described. Yes, I think that that is the basis of Cheeks, and then the non- Cheeks, but it's not really in the holdings of the relevant Supreme Court cases on which you're relying, are you? I mean, Ganji talks about if this were a dispute over wages as opposed to the applicability of the statute, a different rule might apply. So you're extending the holdings of the relevant Supreme Court precedent, or am I misunderstanding? No, the Supreme Court precedent did not specifically address cases where there's a bona fide dispute over wages and hours, although it's hard to see why there would be a difference in that circumstance. And even if there were some difference in those sorts of controversies, there still could not be automatic entry of judgment on a Rule 68 offer and purported acceptance because there would still need to be some review by the court to determine whether there was in fact such a controversy in the case. And I also want to get back to the language of Rule 68, it does not contain the applicable federal statute language, but it does base whether and fear of judgment happens on whether there has been an offer and an acceptance. And Rule 68 offers, settlements are interpreted according to basic contract principles, which require valid offers and valid acceptances. And in the FLSA context, employees, because they cannot waive their claims, do not have the authority validly to accept offers to settle their FLSA claims without court or DOL approval. This is the Department of Labor argument, essentially, that it is not a contract. And that, of course, gets around any of the fact of language or something of that sort. The problem with it, of course, it is that if that is so, then the Fifth Circuit exception wouldn't be there either. I mean, the Fifth Circuit saying it isn't absolute wouldn't apply, because if it needs a contract and this isn't a contract, then any dispute settlement would be of that sort, wouldn't it? But we do not think that the court approval requirement is limited to only certain types of cases. We think that that applies across the board to FLSA cases. And Cheeks did not distinguish between different controversies in holding that the FLSA required court or DOL approval. Taking this position would allow us to avoid any question about whether the language of a statute is this or that or the other thing in 68 and in the others. It does make a much broader holding than one which just said there may be such things, but this one isn't it yet. Well, it's recognizing that Rule 68 presupposes that there can be a valid acceptance of the offer that is made. But in the FLSA context, there cannot be a valid acceptance of an offer without court or DOL approval. So the language in Rule 68 requiring the court to enter judgment on an accepted offer simply never comes into play. Because there has not been a valid acceptance of the offer without court or DOL approval. And this does go to the capacity of the employee to enter into these sorts of claims. That because they cannot waive their rights and the approval requirement is based on the recognition that employees cannot waive their rights to FLSA. Their rights under the FLSA. That because of the unequal bargaining power, they cannot agree to be paid less than a minimum wage or overtime. I also do want to address the question about the burden that is, whether there is a burden caused by requiring approval. And the district court explained that this does not cause a burden on the parties that courts have come up with systems of having the approval process work quickly. So for example, in Sanchez versus Burgers and Cupcakes, the court in that case, after determining that settlement approval was necessary, the parties filed a three page letter eight days later that explained why the settlement was fair. That included an exhibit with the plaintiff's calculations. And then five days after that, the court approved the settlement and ordered the clerk to enter judgment. So it was not a long delay. It did not place a burden on the plaintiffs. The fact that there wasn't a long delay in one case doesn't mean that there can't be a long delay in another case. It depends on how the district judge feels about his job or her job. And district courts have come up with systems of having this work quickly. But in contrast, it does protect employees. If we found your way and we were to make some kind of a statement about speedy rulings, that might help. Yeah. Thank you. Thank you. I want to speak first to the point that this judicially made requirement of judicial review should extend here. One thing I want to note is recently the Supreme Court in Encino Motors LLC rejected a sort of similar judicial requirement that exemptions in the FLSA be read narrowly based on the public policy purpose behind FLSA. The court said that there's nothing in the statute that requires such a narrow review when other statutes get a fair reading. And it rejected that stance stating that the court should not assume that whatever might appear to further the statute's primary objective must be the law. So should the court rule here, there's no indication by Congress in the statute or the regulation. Indeed, Congress knows how to, in a similar statute, more protective statute, provide for a waiver prohibition, and even in that instance, allows for private settlements of litigation. Isn't that all saying that there are some waivers that are in the statute, allowed, and some that are not, so that essentially the Supreme Court is saying the FLSA statute has certain meaning apart from its words and doesn't have some other meanings, which is just tells us what the statute is. And they've told us that as to some things it's there, and to some things it's not. The Supreme Court has said with regard to where the wages are undisputably owed and in a time when liquidated damages would automatically in 100% of the time be owed. In that instance, to uphold the public policy of the FLSA, they would not allow a waiver of the liquidated damages. I want to come back to something else, and that is really, what is 68A about? 68A is about making settlements about size of damages when those are in doubt. That's why it was passed, that's why it's there, so the tort settlements essentially will get settled, and if you make an offer, that's fine. How does that have anything to do with a situation where the damages are fixed anyway, liquidated? I mean, I understand the matter of language, but why does that statute really have anything to say about its mandatory nature in a situation like this, which is really not what it was about. It was about getting people to accept settlements in torts. Well, to the extent that it's meant to create a settlement where there are disputes about the facts and what's owed, then you could say that this is precisely a place where a waiver may be allowed. Because it is not a place where there's undisputed wages. It's not a place where it's clear and undisputed that there are other damages that would automatically be owed. In these FLSA cases, typically there's always a dispute as to what the rate of pay is, what the hours are. And in that way, there's no issue about public policy. Rule 68 also provides other protections that Cheeks thought were concerns in the context of Rule 41. Here it will have to be on the public docket. This court in McAuley v. TransUnion rejected as invalid an offer that required it to be sealed. I'm sorry, could you remind me what the complaint, the plaintiff's complaint said about damages here? The dispute here was essentially whether or not the plaintiff was paid a salary consistently through their time, and so essentially the rate of pay. There was also a discrimination portion of the complaint. Is there an estimate in the complaint of the amount that the plaintiff had been deprived? No, typically that won't be there. The only pleading requirement. But, no, there wasn't. And there's no evidence at this point as to what the actual damage calculation would have been if the plaintiff had been completely successful at trial. No, there was a dispute based on, yes, based on, there were records that the employer had. The plaintiff thought that those were not credible, so there was a dispute not only as to what the record said, but also as to the rate of pay. And it went to mediation, it was unsuccessful. Thank you. Thank you both. Yes, very well argued. Very well argued on both sides.